I have examined all the other exceptions to the admission of evidence, and find none that will justify a reversal of the order appealed from. The order should be affirmed, with costs. All concur.

(86 App. Div. 179.)

### In re WHITMORE'S WILL.

### In re MERRITT.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1903.)

1. WILLS—CONSTRUCTION—ADVANCEMENTS.

Testator directed the advancements made to each of his four children to be added to the corpus of his estate, and that the estate as so increased should be divided in four parts, one of which was to be apportioned to each of the children, after deducting the amount which had been advanced to each respectively. It appeared that the advancements made to one of the children, who was insolvent, were in excess of one-fourth of the estate. *Held,* that the shares allotted to each of the other three children should abate pro rata to make up for the deficiency.

Appeal from Surrogate's Court, Niagara County.

Judicial settlement of the account of John A. Merritt as executor of the will of William W. Whitmore, deceased. From a decree of final settlement, Ella Whitmore and other beneficiaries under the will appeal. Modified.

The proceeding was instituted by the executor on the 13th day of August, 1902, by filing a petition in the office of the surrogate's court, asking for a judicial settlement of his account and for his discharge as executor. Accompanying the petition, and made a part thereof, were schedules which contained a detailed statement of the account, and all the transactions of the executor as such were fully set forth. It appeared that, after paying all debts and demands against the estate, the costs and expenses of administration, and after deducting the commissions allowed by the court, there was a balance for distribution among the residuary legatees named in the will of $22,155.97, which constituted the residuum of the estate. Of that sum the executor had advanced from time to time various sums, aggregating $1,437.80, to Ella Whitmore, one of the residuary legatees, to apply upon her legacy; so that at the time of the accounting there was actually in the hands of the executor for distribution only the sum of $20,718.17. All persons interested were duly cited to appear upon the accounting, and did so, either in person or by counsel. No question was raised before the surrogate, nor is any raised in this court, as to the correctness of the executor's account, as to his management of the estate, or as to the amount of the allowances directed by the decree to be paid out of the same. The only controversy between the parties arises over the amount or share of the balance of $20,-718.17, which the residuary legatees named in the will are respectively entitled to receive. The learned surrogate's court decided they were entitled to take, and directed the executor to make payment, as follows:

| | |
|---|---:|
| Henry Whitmore, a son of the testator | $ 1,965 98 |
| Ella Whitmore, a daughter | 8,952 08 |
| Herbert W. Weld, a grandson | 2,218 38 |
| Harry B. Weld, a grandson | 2,471 09 |
| Helen B. Weld Munson, a granddaughter | 2,555 33 |
| Arthur Wisner Weld, a grandson | 2,555 33 |
| Total | $20,718 17 |

Upon making such payments and filing receipts therefor, the decree provided that the executor should be discharged from all further liability as such. All of the above-named distributees except Henry Whitmore appeal

from the decree so made. The executor does not appeal. The only question presented for our consideration is whether or not the distribution directed by the decree is correct. That can only be determined by ascertaining the intent of the testator as expressed by the language used in subdivision 3 of the third clause of the will. All the facts are admitted.

Argued before ADAMS, McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

S. Wallace Dempsey, for appellants.

W. H. Ransom, for respondent.

McLENNAN, J. The will which is the subject of dispute was executed on the 6th day of August, 1894. Mary A. Whitmore, the testator's wife, and his two sons, Henry and Charles, were named as executors. March 10, 1898, a codicil was executed, which revoked such appointment of executors, and named the petitioner, John A. Merritt, sole executor. The codicil also changed the will in another respect, to which attention will be called hereafter. The will and codicil were admitted to probate by the surrogate's court of Niagara county on the 16th day of January, 1899, and letters testamentary issued to the petitioner, who immediately entered upon the discharge of his duties as executor. The testator left, him surviving, his only heirs and next of kin Mary A. Whitmore, his widow, the respondent Henry Whitmore, a son, the appellants Ella Whitmore, a daughter, and Herbert W. Weld, Harry B. Weld, Helen R. Weld (now Munson), and Arthur Wisner Weld, children of Emma Whitmore Weld, a deceased daughter of the testator. He also left nine other grandchildren, children of his deceased son, Charles Whitmore, and Carrie Whitmore, his wife. By the will certain personal property was specifically bequeathed, and provision was made for the support and maintenance of the widow during her life; but it is unnecessary to examine those provisions, because the widow died before the executor filed his account, and concededly the proceeds of all property which should have been included in the residuum of the estate was so treated and accounted for by the executor, and the amount—$22,155.97—is admitted to be correct.

Subdivision 3 of the third clause of the will, the meaning of which is in dispute, provides as follows:

"Third. All the rest, residue and remainder of my estate shall be by my executor divided into four parts or shares, to be ascertained as follows: In determining the amount of my estate they shall charge the several persons hereinafter in this paragraph named with the sums set against their respective names, as so much money by me heretofore paid to or advanced to each thereof respectively:

"Henry Whitmore [respondent] eleven thousand dollars.

"Ella Whitmore [appellant] one thousand dollars.

"Herbert W. Weld [appellant] seven hundred dollars.

"Harry B. Weld [appellant] four hundred dollars.

"Helen R. Weld [now Munson, appellant] three hundred dollars.

"Arthur Wisner Weld [appellant] three hundred dollars."

The third clause then contained the statement, in substance, that the testator's son Charles Whitmore was indebted to him in the sum of $2,136.35 for moneys loaned and advanced; also on account of loans and moneys advanced to the firm of Charles Whitmore & Co.,

of which Charles was a member, the exact amount of which was un-known. Said firm was then insolvent, and an assignee had been ap-pointed for the benefit of its creditors, and the testator stated that it was his purpose to file a claim with the assignee for the collection of such firm indebtedness. It was then further provided by the will:

"And I direct my executors to charge Charles Whitmore with any balance that may remain unpaid of my claim against said firm, after applying there-on all dividends that may be received on account thereof in reduction thereof. The sum so to be charged (if any) to be in addition to the matters afore-said.

"And my executors, after adding to the sum of the estate which shall come into their hands all of the sums so to be charged, as aforesaid, as assets, shall divide the resulting sum by four, and the quotient so derived shall be taken and regarded as the one fourth share of my estate, and the shares so ascertained shall be paid out by my executor as follows:

"To my son Henry Whitmore one of said one fourth shares, less the sum of eleven thousand dollars.

"To Carrie Whitmore, wife of my son Charles Whitmore, one of said one fourth shares, less the sum so to be charged to him, as aforesaid.

"To my daughter Ella Whitmore one of said one fourth shares, less the sum of one thousand dollars.

"The remaining one fourth share my executors shall divide into four equal parts, and they shall pay one thereof, less seven hundred dollars, to my grandson Herbert W. Weld; and one part thereof, less four hundred dollars, to my grandson Harry B. Weld; and one part thereof, less three hundred dollars, to my granddaughter Helen R. Weld (now Munson); and one part thereof, less three hundred dollars, to my grandson Arthur Wisner Weld."

The codicil revoked the above bequest to Carrie Whitmore of one-fourth of the estate, and devised the same to the children of the testa-tor's son Charles Whitmore, share and share alike, and the second clause of the codicil provided:

"Second. The charges to be made against Charles Whitmore for moneys loaned and advanced him, and to the firm of Charles Whitmore & Company, as directed by said will, shall be charged and treated as though they had been made to said children of Charles Whitmore, for the purpose of deter-mining their share in my estate; meaning hereby that advances made to said Charles Whitmore, including loans to said firm, shall be treated and regarded only as advances on account of the one quarter part of my estate so given to said children."

It is apparent that it was the intention of the testator to provide for such a distribution of the residuum of his estate as would give to each of his four children, if living, an equal share of his property, taking into account any advancements made by him to them, respectively; and that in case of the death of any of them the children, if any, of such deceased child, should take, share and share alike, the portion which the parent would have taken if living; also taking into account any advancements made to such grandchildren respectively. For the pur-pose of carrying out such intention, the testator gave specific instruc-tions to his executor, and while at first blush they seem complicated, and inadequate to give effect to such intention, upon careful examina-tion we conclude they are ample, and, if strictly followed, will produce the exact result desired, and really furnish an absolutely correct and unique method of arriving at such result.

It was the intention of the testator—and so declared in almost ex-press terms—that any and all advancements made to the residuary

legatees should be regarded and treated by the executor, for the purposes of distribution of the residuum of the estate, as assets; precisely the same as if each of such legatees had given his or her duebill or promissory note for the same, and which had come into the executor's hands. The exact amount of the advancement made to each legatee was stated in the will, except as to the amount advanced to the firm of which the testator's son Charles was a member, which amount was unknown; but he provided, in substance, that when ascertained it should be regarded the same as if made directly to such son. The amount of such firm indebtedness, after deducting $1,801.30 received from the assignee by the executor, was $15,343.01. Add to that $2,136.35, the sum advanced to Charles individually, and it makes his total indebtedness to the estate, or advancement, $17,479.36. Thus ascertained, the advancements aggregated $31,179.36. Add $22,-155.97, the net residuum of the estate, and we have $53,335.33, which sum, for the purposes of distribution, represents the assets of the testator's estate. The testator directed that such sum should be divided by four for the purpose of ascertaining the share to which each of his children would be entitled if living, or, if dead, the share to which the children of such deceased child would be entitled, deducting therefrom, of course, any advancement which had been made to such child or children. One-fourth of $53,335.33, the total assets (for the purpose of distribution), is $13,333.83, and it will be readily seen that such sum would represent the share to which each of the testator's four children would be entitled if living, or, if dead, the share the representatives of such deceased child would take, provided only that all the advancements are available assets in the hands of the executor. They are necessarily all good to the extent of the share of the residuum which any such legatee is entitled to receive. If no one of such residuary legatees had been advanced a sum exceeding the amount of such quotient, or one-fourth of the estate ascertained as above, distribution would be easy, and would be made by charging any distributee with the amount advanced, surrendering his or her duebill or promissory note if one had been given, and paying the difference, if any, between the amount advanced and said one-fourth share of the estate; which plan, or method would give to each exactly the same amount, counting any advancements received before the testator's death, and what was received upon the final distribution of the estate.

The apparent difficulty in making a proper distribution in the case at bar arises from the fact that there was advanced to the testator's son Charles Whitmore a sum largely in excess of a one-fourth share of the total estate, viz., $4,145.53—the difference between $17,479.36, the total advancement to Charles, and $13,333,83, the one-fourth of the estate, as ascertained for the purposes of distribution. The estate of Charles being concededly insolvent, such excess of $4,145.53 is a worthless asset in the hands of the executor. Therefore of the $4,145.53 the loss arising on account of such worthless asset, one-third, viz., $1,381.84, should be deducted from each of the other three shares, leaving $11,951.99 as the share of the estate to which the testator's son Henry and his daughter Ella are each entitled, and the portion which the children of the deceased daughter, Emma, should re-

ceive, if all the advancements except the $4,145.53 are regarded as good assets in the executor's hands, as intended by the testator they should be. By the terms of ·the will the children of the testator's deceased son, Charles, are to receive nothing, because there was advanced to him a sum in excess of one-fourth of the estate.

It follows that the share of the residuum of the estate which Henry Whitmore and Ella Whitmore are entitled to receive is to be determined by deducting from $11,951.99 (one-fourth of the estate, less one-third of the worthless asset) the sum or sums advanced or paid to them respectively; that the amount which the children of the deceased daughter, Emma Whitmore Weld, are entitled to receive, respectively, is to be determined by dividing said sum of $11,951.99 by four, and subtracting from the quotient thus obtained the amount which has been advanced to each child. Such computation or division gives to each of the four children of the testator (or the representatives of any child, if deceased) · exactly the same amount of property, counting what was received before the testator's death and what will be received upon final distribution, except that, as Charles received $4,145.53 more than his one-fourth share, and his estate being insolvent, such excess was completely lost to the estate, and such loss must be borne equally by those ·entitled to the other three shares.

Such being the distribution which was clearly intended by the testator, as declared in his will, we think that the authorities cited by respondent's counsel in no manner prevent the court from giving full force and effect to such intention, but, on the contrary, establish that it is the duty of the court to decree such division of the residuum of the estate as was intended by the testator.

We therefore conclude that the residuary legatees, respondent and appellants, are entitled to receive of the $20,718.17 remaining in the hands of the executor for distribution the amounts following, respectively:

Henry Whitmore, $11,951.99, less $11,000 advanced to him by the testator ........................................................... $    951 99
Ella Whitmore, $11,951.99, less $1,000 advanced to her by the testator, and $1,437.80 paid to her by the executor................   9,514 19
Herbert W. Weld, one-fourth of $11,951.99, less $700 advanced to him by the testator .......................................   2,287 99
Harry B. Weld, one-fourth of $11,951.99, less $400 advanced to him by the testator ........................................   2,587 99
Helen R. Weld Munson, one-fourth of $11,951.99, less $300 advanced to her by the testator .................................   2,687 99
Arthur Wisner Weld, one-fourth of $11,951.99, less $300 advanced to him by the testator ....................................   2,687 99
                                                                                                                           ─────────
    Total ................................................................ $20,718 14

—And that the decree of the Surrogate's Court should be modified accordingly, and, as so modified, is affirmed, with one bill of costs, to be paid by the executor out of the share of the respondent Henry Whitmore. All concur.